IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ASSURED GUARANTY CORP., *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>ALEJANDRO GARCIA-PADILLA, *et al.*,<br><br>**Defendants.** | **Civil No.** 16-1037 (FAB) |
| FINANCIAL GUARANTY INSURANCE CO.,<br><br>**Plaintiff,**<br><br>v.<br><br>ALEJANDRO GARCIA-PADILLA, *et al.*,<br><br>**Defendants.** | **Civil No.** 16-1095 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Plaintiffs,[1] New York based insurance companies, brought suit against defendants, government officials of the Commonwealth of Puerto Rico, seeking a declaratory order that two executive orders ("OEs") by Puerto Rico Governor Alejandro Garcia-Padilla ("Governor Garcia-Padilla") violate the Takings, Due Process, and Contracts

---

[1] Plaintiffs in Civil No. 16-1037 are Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Ambac Assurance Corp. Plaintiff in Civil No. 16-1095 is Financial Guaranty Insurance Co. (Civ. Nos. 16-1037, Docket No. 1 at p. 3; 16-1095, Docket No. 1 at p. 4.)

Clauses[2] of the United States Constitution.  (Civ. Nos. 16-1037, Docket No. 1 at pp. 32-36; 16-1095, Docket No. 1 at pp. 46-51.) Plaintiffs also seek an injunction against government officials enforcing the executive orders.  (Civ. Nos. 16-1037, Docket No. 1 at pp. 33-36; 16-1095, Docket No. 1 at pp. 47-51.)  Defendants[3] move to dismiss plaintiffs claims arguing that, as Commonwealth government officials sued in their official capacities, they are entitled to Eleventh Amendment immunity pursuant to the doctrine established in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984). (Civ. Nos. 16-1037, Docket No. 25 at pp. 5, 7-21;[4] 16-1095, Docket No. 37 at pp. 29-46.)  Plaintiffs in Civil Case Number 16-1095 also bring federal preemption claims, (Docket No. 1

---

[2] Plaintiff Financial Guaranty Insurance Co. also asserts claims pursuant to the Equal Protection Clause, (Civ. No. 16-1095, Docket No. 1 at pp. 49-51), which defendants address in the Eleventh Amendment immunity section of their motion to dismiss, (Civ. No. 16-1095, Docket No. 37 at pp. 22-23).  The Court's Eleventh Amendment analysis below also applies to plaintiff's Equal Protection Clause claim.

[3] Defendants in both cases are Hon. Alejandro García Padilla, Hon. Juan C. Zaragoza Gómez, Hon. Ingrid Rivera-Rocafort, Hon. Luis Cruz-Batista, Hon. Víctor Suárez-Meléndez, Hon. César Miranda-Rodríguez, Hon. Melba Acosta Febo, and Hon. Juan Flores Galarza, and their successors in their respective official capacities. (Civ. Nos. 16-1037, Docket No. 1 at pp. 4-6; 16-1095, Docket No. 1 at pp. 5-6.)

[4] Defendants Melba Acosta Febo and Ingrid Rivera Rocafort join these motions to dismiss. (Civil Nos. 16-1037, Docket Nos. 28, 30; 16-1095, Docket Nos. 39, 41.)  The Court uses the docket number of the documents containing the substantive arguments.

at pp. 21-29), which defendants move to dismiss, (Docket No. 37 at pp. 23-33).

Before the Court are defendants' motions to dismiss,[5] (Civ. Nos. 16-1037, Docket Nos. 25, 30; 16-1095, Docket Nos. 37, 41), plaintiffs' oppositions (Civ. Nos. 16-1037, Docket Nos. 34, 35; 16-1095, Docket Nos. 46, 47), and defendants' replies, (Civ. Nos. 16-1037, Docket Nos. 42, 44; 16-1095, Docket Nos. 58, 62).  For the reasons set forth below, the Court **DENIES** defendants' motion to dismiss, (Civ. No. 16-1037, Docket No. 25), **DENIES IN PART** and **GRANTS IN PART** defendants' motions to dismiss, (Civ. No. 16-1095, Docket No. 37) and **DENIES** defendant Acosta's motion to dismiss, (Civ. Nos. 16-1037, Docket No. 30; 16-1095, Docket No. 41.)

## BACKGROUND

### I.   Puerto Rico Debt Prioritization

The Constitution of the Commonwealth of Puerto Rico requires a balanced annual budget, P.R. Const Art. VI § 7, and carries responsibilities to fund public debt payments and ordinary operating expenses from year-to-year, Id. § 6.  If the budget is unbalanced – appropriations exceed total estimated resources – the Commonwealth government must raise taxes sufficient to cover the difference.  Id. § 7.

---

[5] Pursuant to the Court's Order, the nearly identical motions to dismiss in these cases will be handled jointly, but the cases are not consolidated.  (Civ. Nos. 16-1037, Docket No. 23; 16-1095, Docket No. 8.)

In cases of an unbalanced budget, the Commonwealth Constitution establishes a priority system detailing in what order appropriations will be paid.  P.R. Const Art. VI § 8.  First priority is assigned to "interest on the public debt and amortization thereof."  Id.

Subsequent priorities are established by Puerto Rico law, the Management and Budget Office Organic Act ("OMB Act"), P.R. Laws Ann. tit. 23 § 104(c).  The OMB Act reiterates that "payment of interest and amortizations corresponding to the public debt" is the first priority.  Id. § 104(c)(1).  The second priority includes obligations from legal contracts, eminent domain court judgments, and "binding obligations to safeguard the credit, reputation and good name of the Government of the Commonwealth of Puerto Rico." Id. § 104(c)(2).  Third, payment is to be made to "appropriations for regular expenses" including public health, security, education, welfare programs, retirement systems, and other public services. Id. § 104(c)(3).  Finally, fourth and fifth priority are given to capital works and improvements depending on their stage of completion.  Id. § 104(c)(4)-(5).

In addition to being laid out in the OMB Act, this priority structure is included in each of the statutes pursuant to which the Authority Bonds were issued, in disclosure documents issued by the Authorities and used to offer the bonds, and in offering documents for the Commonwealth's public debt.  See P.R. Laws Ann. tit. 13

§ 31751(a)(1)(C); P.R. Laws Ann. tit. 9 §§ 2021, 5681; P.R. Laws Ann. tit. 13 § 2271v; P.R. Laws Ann. tit. 3 § 1914; Civ. Nos. 16-1037, Docket No. 1 at pp. 18-20; 16-1095, Docket No. 1 at pp. 31-32.

## II.  Issuance of Bonds

Several public corporations in Puerto Rico are authorized to contract and issue bonds.  Pursuant to the Puerto Rico Highway and Transportation Act, P.R. Laws Ann. 9 § 2004(l) the Puerto Rico Highways and Transit Authority ("PRTHA") has $4.4-4.6 billion in outstanding bonds issued to fund the construction of highways and transportation systems.  (Civ. Nos. 16-1037, Docket No. 1 at p. 8; 16-1095, Docket No. 1 at p. 10.)  Pursuant to the Puerto Rico Convention Center District Act, P.R. Laws Ann. tit. 23 § 6412(h), the Puerto Rico Convention Center District Authority ("PRCCDA") has issued approximately $420-436 million in outstanding bonds pursuant to a Trust Agreement.  (Civ. Nos. 16-1037, Docket No. 1 at p. 10; 16-1095, Docket No. 1 at p. 12.)  Pursuant to the Puerto Rico Infrastructure Financing Act, P.R. Laws Ann. tit. 3 § 1906(l), the Puerto Rico Infrastructure Financing Authority ("PRIFA") has issued tax revenue bonds with approximately $1.6 billion outstanding.  (Civ. Nos. 16-1037, Docket No. 1 at p. 11; 16-1095, Docket No. 1 at p. 12.)

Pursuant to the Commonwealth Constitution, bondholders may sue to enforce the Management and Budget Office ("OMB") priority

structure for repayment of bonds.  P.R. Const. Art. VI § 2. Additionally, the Commonwealth pledged that it would not limit or restrict the Authorities' rights or powers until all issued bonds and interest are paid.  (Civ. Nos. 16-1037, Docket No. 1 at pp. 9-12; 16-1095, Docket No. 1 at pp. 10-13.)

## III. Pledged Funds

These bonds are secured by taxes and tax liens.  The PRHTA funds are secured by "the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth."  P.R. Laws Ann. tit. 9 § 2004(l).  The PRCCDA bonds are secured by a lien on a hotel occupancy tax.  (Civ. Nos. 16-1037, Docket No. 1 at p. 10; 16-1095, Docket No. 1 at p. 11.)  A portion of a federal excise tax on rum secures the PRIFA bonds.  (Civ. No. 16-1037, Docket No. 1 at p. 12; 16-1095, Docket No. 1 at p. 13.)

The funds from these taxes and tax liens may be used to pay the public debt if no other Commonwealth resources are available.  (Civ. Nos. 16-1037, Docket No. 1 at p. 20; 16-1095, Docket No. 1 at p. 33 (quoting Commonwealth of Puerto Rico, Financial Information and Operating Data Report (Nov. 6, 2015)).

## IV. The Governor's Executive Orders

On November 30, 2015, the Commonwealth Governor Alejandro Garcia Padilla ("Governor Garcia-Padilla") issued  an executive order, OE-2015-046, in which he announced that a situation existed in which Puerto Rico "d[id] not have sufficient resources to meet

the payment of public debt and, at the same time, maintain essential services of health, safety, education and public welfare." (Civ. No. 16-1095, Docket No. 31-1 at p. 6.) He therefore "retained assigned revenue" (*i.e.* "clawed back" previously allocated funds) from Commonwealth agencies including the PRHTA and the Tourism Company on behalf of the Convention Center and instructed the Treasury Department to use those funds to service the public debt. (Civ. No. 16-1095, Docket No. 31-1 at pp. 7-8.) On December 8, 2015, Governor Garcia-Padilla issued a second executive order, OE-2015-049. (Civ. No. 16-1095, Docket No. 31-2 at p. 7.) In OE-2015-049, Governor Garcia-Padilla delegated specified budgetary administration powers to the Director of the OMB. Id. OE-2015-049 instructed that the OMB Director was to "be guided by the priority rules for budgetary adjustments established under the powers specified in Article 4, subsection (c) of the OMB Act, with the purpose of maintaining essential services and to ensure the sound operation of the Government of the Commonwealth of Puerto Rico." Id. OE-2015-049 also instructed a previously created Working Group for the Fiscal and Economic Restoration of Puerto Rico ("Working Group") to create guidelines (the "Guidelines") "to manage the cash flow . . . for the [then-] current fiscal year." Id. Finally, it instructed governmental agency heads "to prioritize spending in their entities according to the budgetary priorities and adjustments established by the

Director of the OMB and the [Working Group] guidelines." Id. at p. 8.

## V.   The Working Group Guidelines

On December 17, 2015, Deputy Secretary of the Treasury Juan Flores-Galarza issued Circular Letter No. 1300-15-16 to all government departments "with funds under the custody of the Treasury Department." (Civ. No. 16-1095, Docket No. 31-3 at p. 7.) The Circular Letter references OE-2015-46's clawback of funds. Id. The Circular then establishes payment priority guidelines pursuant to OE-2015-049. Id. at pp. 7-8. The Guidelines' structure largely mirrors that of the OMB Act - keeping public debt as first priority, court judgments as second, and essential services as third - but, the second priority omits contractual obligations and "binding obligations to safeguard the credit, reputation and good name of the Government of the Commonwealth of Puerto Rico." Compare id. at pp. 7-8 with P.R. Laws Ann. tit. 23 § 104(c). Subordinate priorities were also adjusted. Compare Civ. No. 16-1095, Docket No. 31-3 at pp. 7-8 with P.R. Laws Ann. tit. 23 § 104(c).

## VI.  Plaintiffs' Insurance of Puerto Rico Bonds

Plaintiffs insure bonds under a financial guaranty insurance model in which, upon the bondholders' failure to make payments on the bonds, plaintiffs make payments and become owners of the bonds. (Civ. Nos. 16-1037, Docket No. 1 at p. 7; 16-1095, Docket No. 1 at p. 9.)  Plaintiffs provide insurance through insurance agreements,

trust agreements, and policies. (Civ. Nos. 16-1037, Docket No. 1 at pp. 9-12; 16-1095, Docket No. 1 at pp. 11-13.)

On January 1, 2016, Puerto Rico defaulted on $35.941 million bonds causing the plaintiffs in 16-1037 to pay $10,750,625 and the plaintiff in 16-1095 to pay $6,393,666 in claims to PRIFA bondholders. (Civ. Nos. 16-1037, Docket No. 1 at pp. 9-10; 16-1095, Docket No. 1 at p. 13.)

## JOINT DEFENDANTS 12(b)(1) MOTION TO DISMISS

### I.   Rule 12(b)(1) Motion to Dismiss Standard

Pursuant to Rule 12(b)(1), a defendant may move to dismiss when the court's subject-matter jurisdiction is not properly alleged. Fed. R. Civ. P. 12(b)(1).  "As courts of limited jurisdiction, federal courts have the duty to construe their jurisdictional grants narrowly." Fina Air, Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008) (Besosa, J.) (citing Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998)). Because federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. See Droz-Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217, 217 (D.P.R. 2003) (Garcia-Gregory J.) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).

The standard applied to a Rule 12(b)(1) motion is similar to that of a Rule 12(b)(6) motion because the Court accepts a

complaint's well-pled facts as true and views them - and the
inferences drawn from them - in a light most favorable to the
pleader.  See Cirino-Encarnacion v. Concilio de Salud Integral de
Loiza, Inc., 317 F.3d 69, 70 (1st Cir. 2003) (citing Viqueira v.
First Bank, 140 F.3d 12, 16 (1st Cir. 1998)); see also Soto v.
McHugh, 158 F. Supp. 3d 34, 39 (D.P.R. 2016) (Gelpi, J.).  Thus,
"[a] district court must construe the complaint liberally."  Aversa
v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

## II.  Eleventh Amendment Immunity

Defendants move to dismiss plaintiffs' federal Contracts,
Takings, Equal Protection, and Due Process Claims arguing that
plaintiffs' claims are barred by Eleventh Amendment immunity
pursuant to the rule established in Pennhurst, 465 U.S. 89 (1984).
(Civ. Nos. 16-1037, Docket No. 25; 16-1095, Docket No. 37 at pp. 1-
23.)  Plaintiffs' counter that Pennhurst does not apply, but rather
the doctrine established in Ex Parte Young, 209 U.S. 123, bars
defendants from asserting Eleventh Amendment immunity.  (Civ.
Nos. 16-1037, Docket No. 34; 16-1095, Docket No. 47 at pp. 14-26.)

The Eleventh Amendment provides that "[t]he Judicial power of
the United States shall not be construed to extend to any suit in
law or equity, commenced or prosecuted against one of the United
States by Citizens of another State, or by Citizens or Subjects of
any Foreign State."  U.S. Const. amend XI.  "[T]he principle of

sovereign immunity,"[6] applied to the states through the Eleventh Amendment, "is a constitutional limitation on the federal judicial power established in Article III."[7]   Pennhurst, 465 U.S. at 98 ("That a State may not be sued without its consent is a fundamental rule of jurisprudence . . . [such that] the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given.")   Eleventh Amendment immunity is balanced against the supremacy of the United States Constitution and federal laws.   _Ex Parte Young_, 209 U.S. at 159-160.   Generally speaking,[8] the Eleventh Amendment bars suits against the state itself as well as suits against state officials in their official capacities.   See Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002).

The doctrine established by the Supreme Court of the United States in _Ex Parte Young_ created an exception to this bar, 209 U.S.

---

[6] "Puerto Rico enjoys the same immunity from suit that a State has under the Eleventh Amendment." Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano, 695 F.3d 83, 103 n.15 (1st Cir. 2012) (quoting Maysonet-Robles v. Cabrero, 323 F.3d 43, 53 (1st Cir. 2003)).

[7] "The [federal] judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties . . . to Controversies . . . between a State and Citizens of another State . . . ." U.S. Const. Art. III § 2.

[8] The state may waive its Eleventh Amendment or Congress may abrogate it through legislation. Davidson v. Howe, 749 F.3d 21, 28 (1st Cir. 2014).

123 (1908), by recognizing the federal courts' power to "enjoin state officials to conform future conduct to the requirements of federal law." Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015) (quoting Rosie D., 310 F.3d at 234).  The doctrine permits claims for prospective injunctive or declaratory relief against state officials, but bars retrospective claims for damages. Asociacion de Subscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Flores-Galarza, 484 F.3d 1, 24 (1st Cir. 2007) (quoting Dugan v. Rank, 372 U.S. 609, 620 (1963) ("[A] suit, although nominally aimed at an official, will be considered one against the sovereign 'if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'")).

Here, plaintiffs seek declaratory and injunctive relief from Puerto Rico Commonwealth officials in their official capacities. (Civ. Nos. 16-1093, Docket No. 1 at pp. 4-6, 32-35; 16-1095, Docket No. 1 at pp. 5-8, 46-51).  Thus, reading no further, the *Ex Parte Young* exception applies and allows the suit to proceed despite the Commonwealth's Eleventh Amendment immunity.

Defendants, however, argue pursuant to an exception to the *Ex Parte Young* exception that was created in Pennhurst.  The court in Pennhurst held that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . .

the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117. The Court went on to explain that the justification for the *Ex Parte* Young exception for claims based on federal law - balancing federal law supremacy and state sovereign immunity - is absent for claims based on state law. Id. at 106.

Later cases have clarified that federal Constitutional claims, despite being supported by state-created property interests or having other state law ties, are not barred by Pennhurst. Accord Viajes P.R., Inc. v. Martinez-Monge, 711 F. Supp. 674, 676 (D.P.R. 1989) (Cerezo, J.) ("The plaintiff's position is not that it could hold the defendants liable under Puerto Rico's law, but rather, that it has been injured by defendants' failure to implement the Commonwealth's statute and regulation . . . to the extent required by federal law and the Constitution."); Town of Barnstable, 786 F.3d at 140 ("The *Ex parte* Young doctrine's very existence means that a plaintiff may frustrate the efforts of a state policy when those efforts violate or imminently threaten to violate the plaintiff's [federal] constitutional rights and the plaintiff confines its request to the proper form of relief."). A claim is "on the basis of state law" not when the underlying property or contract interests are created by state law, but rather when the claim itself is a state law claim. See Rogers v. Okin, 738 F.2d 1, 9 (1st Cir. 1984) (finding that federal Due Process Clause claim

Civil No. 16-1037 and Civil No. 16-1095 (FAB)                    14

was based on state required due process which exceeded the floor
set by the federal Due Process Clause).

Here, while any property or contractual right that plaintiffs'
may have are likely created by state law, the inquiry in Pennhurst
focuses on the laws which plaintiffs' are claiming were violated,
federal Constitutional Law pursuant to the Equal Protection, Due
Process, Taking, and Contract Clauses.  "While the resolution of
these constitutional issues necessarily requires this court to
ascertain what state law means, this is a far cry from a prohibited
Pennhurst type action which seeks injunctive relief on the basis of
state law."  Ctr. for Disease Det., LLC v. Rullan, 288 F. Supp. 2d
136, 142 (D.P.R. 2003) (Fuste, J.).  Because plaintiffs' here
properly assert Equal Protection, Due Process, Taking, and Contract
Clause violations pursuant to the United States Constitution, the
Pennhurst exception does not apply.  Consequently, the _Ex Parte
Young_ exception to Eleventh Amendment immunity is controlling and
defendants are not shielded.  The Court **DENIES** defendants' motion
to dismiss on the issue of Eleventh Amendment immunity.

**III. Federal Preemption**

**A.    Preemption Generally**

The United States Constitution requires that federal law be
"the supreme Law of the Land."  U.S. Const., Art VI, cl. 2.  "Any
state law that contravenes a federal law is null and void."  Tobin

Civil No. 16-1037 and Civil No. 16-1095 (FAB)          15

v. Fed. Exp. Corp., 775 F.3d 448, 452 (1st Cir. 2014).[9]

Accordingly, "Congress has the power to preempt state law."

Arizona v. United States, 132 S. Ct. 2492, 2500 (2012).  Courts

consider Congress' intent in passing the federal law when

determining if it preempts a state law.  Antilles Cement Corp. v.

Fortuño, 670 F.3d 310, 323 (1st Cir. 2012); Grant's Dairy-Me., LLC

v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14

(1st Cir. 2000) ("Congressional intent is the touchstone of

preemption analysis.").

　　　Congress may explicitly express its intent for a federal law

to preempt a state law ("express preemption"), Grant's Dairy, 232

F.3d at 15, or courts may infer the existence of this intent from

"the structure and purpose of the statute" ("implied preemption"),

Antilles, 670 F.3d at 323.  "Implied preemption" takes two forms:

"field preemption" and "conflict preemption."  Grant's Dairy, 232

F.3d at 15.  "Field preemption" occurs when Congress creates a

federal regulatory scheme that is "so pervasive" as to evidence its

intent to occupy the regulated field without room for the state to

supplement it.  See id.  "Conflict preemption" occurs either when

"compliance with both state and federal regulations is impossible

---

[9] For purposes of the Supremacy Clause, "the laws of Puerto Rico
are the functional equivalent of state laws," Antilles Cement Corp.
v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012), and "the
constitutionality of local ordinances is analyzed in the same way
as that of statewide laws," Hillsborough Cnty. v. Automated Med.
Lab., Inc., 471 U.S. 707, 713 (1985).

["direct conflict"] or when state law interposes an obstacle to the achievement of Congress's discernible objectives ["obstacle conflict"]".  Id.

Preemption is a "strong medicine," that is "not casually to be dispensed."  Id. at 18.  "When the text of a preemption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors preemption.'"  Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008) (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005)).  Courts "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  Wyeth v. Levine, 555 U.S. 555, 565 (2009).

## B.    11 U.S.C. § 903's Preemption of Puerto Rico Laws

"Chapter 9 governs the adjustment of debts of a municipality, 11 U.S.C. §§ 901 et seq., and 'municipality' includes a public agency or instrumentality of a state . . . ."  Franklin California Tax-Free Trust v. Puerto Rico, 85 F. Supp. 3d 577, 584 (D.P.R.) (Besosa, J.), aff'd, 805 F.3d 322 (1st Cir. 2015), aff'd, 136 S. Ct. 1938 (2016) [hereinafter Franklin Trust DPR].  As stated in Franklin Trust DPR, "by enacting section 903(1), Congress expressly preempted state laws that prescribe a method of composition of municipal indebtedness that binds nonconsenting creditors."  Id. at 596.  Section 903 reads:

     This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but–

     (1)  a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition; and

     (2)  a judgment entered under such a law may not bind a creditor that does not consent to such composition.

11 U.S.C. § 903.

## C.   The Parties' Preemption Arguments

Defendants' preemption argument is three-fold. First, defendants argue that 11 U.S.C. § 903(1) does not apply to Puerto Rico, an issue that was before the Supreme Court of the United States at the time defendants' filed their motions to dismiss. (Civ. No. 16-1095, Docket No. 37 at pp. 23-24.) Defendants' first argument was defeated by the United States Supreme Court's decision in <u>Puerto Rico v. Franklin California Tax-Free Trust</u>, which held that although Puerto Rico is not a "state" for purposes of authorizing its municipalities to seek relief under Chapter 9 of the Federal Bankruptcy Code, Chapter 9's preemption provision, *i.e.* § 903, does apply to Puerto Rico and preempts conflicting Commonwealth law.  136 S. Ct. at 1946 (2016).

Second, defendants argue that the actions by the Puerto Rico Commonwealth are not compositions of indebtedness as prohibited by § 903, but rather delays of payment of the full value of the debts.

(Civ. No. 16-1095, Docket No. 37 at pp. 27-32.)  Plaintiff counters by arguing that an indefinite extension is equivalent to a discharge and thus constitutes a composition in violation of § 903. (Civ. No. 16-1095, Docket No. 47 at p. 39.)

Finally, defendants argue that even if the Commonwealth's actions amount to a composition of indebtedness, plaintiffs consented to them, pursuant to § 903(2) by purchasing the bonds when the bonds and enabling statues of the agencies issuing the bonds both clearly stated the repayment priority structure as it applied to the bonds.  (Civ. No. 16-1095, Docket No. 37 at pp. 32-33.)

**D.   Compositions of Indebtedness**

The federal Bankruptcy Code has been inconsistent regarding whether "composition" and "extension" are synonymous or distinct terms.  See Ropico, Inc. v. City of New York, 425 F. Supp. 970, 978-82 (E.D.N.Y. 1976) (detailing history of the terms throughout several Bankruptcy Code chapters).  In Ropico, the district court explained that "[e]xtension plans . . . differ materially from straight bankruptcy arrangements . . . by way of composition, all of which contemplate only a partial payment of the wage earner's debts."  Ropico, 425 F. Supp. at 982.  The district court further explained that "a composition is a present settlement and an extension is a moratorium, and that the two are entirely distinct and separate.  If the proposal is to reduce debts, it is a

composition; if the proposal is merely to postpone payment, it is an extension . . . ." Id.  The Court adopts the interpretation espoused in the holding of Ropico in which the district court recognized that extensions differ from compositions.  This decision is consistent with the Court's recent preemption analysis in Franklin Trust DPR.

In Franklin Trust DPR, this Court considered whether § 903 of the Federal Bankruptcy Code preempted the Puerto Rico Public Corporation Debt Enforcement and Recovery Act ("Recovery Act"). 85 F. Supp. 3d at 594-602.  The Court noted that:

> Chapter 2 of the Recovery Act permits an eligible public corporation to "seek debt relief from its creditors," Recovery Act § 201(b), through "any combination of amendments, modifications, waivers, or exchanges," which may include "interest rate adjustments, maturity extensions, debt relief, or other revisions to affected debt instruments" . . . [and that] Chapter 3 of the Recovery Act permits an eligible public corporation "to defer debt repayment and to decrease interest and principal" owed to creditors.

Franklin Trust DPR, 85 F. Supp. 3d at 597 (internal citations omitted).  The Court found that because "both Chapters 2 and 3 of the Recovery Act create[d] procedures for indebted public corporations to adjust or discharge their obligations to creditors . . . the Recovery Act prescribes a method of composition of indebtedness, which is exactly what section 903(1) prohibits." Id.

In finding the Recovery Act preempted, the Court adopted Black's Law Dictionary's definition of composition. Id. Black's Law Dictionary defines composition as "[a]n agreement to settle a

dispute or debt whereby one party abates part of what is due or claimed."   Black's Law Dictionary 346 (10th ed. 2014).   This definition and the Court's analysis in Franklin Trust DPR make clear that to constitute a composition, the act must reduce or abate part of the debt due.

Here, however, no reduction or abatement occurred.   The Puerto Rico Constitution and OMB Act Section 104(c), establish a payment priority scheme.   P.R. Const. Art. VI § 8; P.R. Laws Ann. tit. 23 § 104(c)).   Nowhere do they discuss or indicate that the Commonwealth will settle with or force debtors to accept less than the full value owed to them.   OMB Act Section 104(d) ensures that any obligation not paid in the year of budgetary shortfall will be entered as a debt existing in the following year's budget.   P.R. Laws Ann. tit. 23 § 104(d).

Plaintiff points to OMB Act Section 104(e)(5)[10] as an example of language indicating a composition of indebtedness.   (Civ. No. 16-1095, Docket No. 47 at p. 39.)   Although containing language that allows the governor to disregard the payment priority structure of Section 104(c) and Section 104(d), Section 104(e)(5) addresses only the availability of funds to agencies pursuant to

---

[10] OMB Act Section 104(e)(5) authorizes the Governor "[t]o establish budgetary reserves and restrict the funds available to the agencies, in whatever way he deems pertinent, when, in the execution and control of the budget, he considers it necessary regardless of the circumstances established in subsections (c) and (d) of this section."   P.R. Laws Ann. tit. 23 § 104(e).

budgetary restrictions.  P.R. Laws Ann. tit. 23 § 104(d).  Section 104(e)(5) does not dispense of or reduce any Commonwealth obligation pursuant to the bonds.  <u>Id.</u>

Neither do the executive orders reduce or abate part of the debt.  OE-2015-046 incorporated by reference the payment priority established in Article VI, Section 8 of the Commonwealth Constitution, (Civ. No. 16-1095, Docket No. 31-1 at p. 8), and OE-2015-049 incorporated by reference the payment priority scheme established in the OMB Act, (Civ. No. 16-1095, Docket No. 31-2 at p. 7).  Although OE-2015-049 instructs the Director of the OMB to act "with the purpose of maintaining essential services and to ensure the sound operation of the Government of the Commonwealth of Puerto Rico," it also instructs that the OMB Director's actions in doing so "shall be guided by the priority rules for budgetary adjustments established under the powers specified in Article 4, subsection (c) of the OMB Act."  (Civ. No. 16-1095, Docket No. 31-2 at p. 7.)

While Circular Letter 1300-15-16 created by the Working Group may change the payment priority structure established in the OMB Act by removing express mention of contractual and credit safeguarding obligations from the language of the second priority, <u>see</u> Civ. No. 16-1095, Docket No. 31-3 at pp. 7-8, it does not create a composition.  Decreasing the priority of payment does not reduce or abate the obligation.  The full amount is still due to

the bondholder.  Changing the payment priority structure, however, while not preempted by Section 903, may still constitute a violation of the Equal Protection, Due Process, Takings, and Contracts Clauses as asserted by plaintiffs.

Because neither the Puerto Rico Constitution, the OMB Act, the executive orders, nor the circular letter relieve or reduce the Commonwealth's obligation to pay the debt owed on the bonds in full, no composition of debt has occurred.  Accordingly, these documents are not expressly preempted state laws that prescribe a method of composition of municipal indebtedness in violation of Section 903.  Having resolved the preemption issue on defendants' second argument, the Court need not address defendants' consent argument.  The Court **GRANTS** defendants' motion to dismiss regarding plaintiff's preemption-based claims.   Dismissing plaintiff's preemption-based claims, however, does not affect plaintiff's Equal Protection, Due Process, Takings, and Contracts Clause claims, which will proceed to discovery.

## DEFENDANT ACOSTA'S 12(b)(6) MOTION TO DISMISS

In addition to joining co-defendants Rule 12(b)(1) arguments, defendant Acosta moves to dismiss pursuant to Rule 12(b)(6).  After considering defendant's motions to dismiss, (Civ. Nos. 16-1037, Docket No. 30; 16-1095, Docket No. 41), plaintiffs' oppositions,

(Civ Nos. 16-1037, Docket No. 35; 16-1095, Docket No. 46[11]), and defendant's replies, (Civ. Nos. 16-1037, Docket No. 44; 16-1095, Docket No. 62), the Court finds that plaintiffs have asserted sufficient facts to survive dismissal of their claims against defendant Acosta in her capacity as President of the GDB.[12]

## I.  **Rule 12(b)(6) Standard**

Rule 12(b)(6) allows the Court to dismiss a complaint when the pleading "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In resolving a motion to dismiss, the Court employs a two-step approach.  First, the Court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  Second, the Court "take[s] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief."  Id.

The appropriate inquiry "in assessing plausibility is not whether the complaint makes any particular factual allegations but rather, whether 'the complaint warrant[s] dismissal because it

---

[11] Plaintiffs' arguments in Civ. No. 16-1037, Docket No. 35 and Civ. No. 16-1095, Docket No. 46 are identical.

[12] Claims against defendant Acosta survive her tenure in office because plaintiffs have included her successor as a defendant. (Civ. Nos. 16-1037, Docket No. 1 at p. 7; 16-1095, Docket No. 1 at p. 5.)

failed *in toto* to render plaintiffs' entitlement to relief plausible.'" <u>Rodriguez-Reyes v. Molina-Rodriguez</u>, 711 F.3d 49, 55 (1st Cir. 2013) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 569 n.14 (2007)); <u>see also</u> <u>Garcia-Catalan v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013) ("In determining whether a complaint crosses the plausibility threshold, the reviewing court [must] draw on its judicial experience and common sense. This context-specific inquiry does not demand a high degree of factual specificity.") (internal quotations and citations omitted)). "A 'short and plain' statement[, as required by Federal Rule of Civil Procedure 8,] needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Ocasio-Hernandez v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011) (quoting <u>Twombly</u>, 550 U.S. at 555). In evaluating a motion to dismiss, the Court may consider documents attached to the complaint and public documents. <u>Foley v. Wells Fargo Bank, N.A.</u>, 772 F.3d 63, 68 (1st Cir. 2014).

## II. Discussion

Defendant Acosta contends that there are no factual allegations in the complaints that state a plausible claim to relief against her in her official capacity as President of the Government Development Bank of Puerto Rico ("GDB"). (Civ. Nos. 16-1037, Docket No. 30 at p. 2; 16-1095, Docket No. 41 at p. 2.) Defendant Acosta argues that no plausible claims are     alleged

because plaintiffs' complaints' singular mention of Acosta as GDB
President neither seeks a remedy from Acosta or the GDB nor
includes an allegation that the GDB is acting pursuant to the
executive orders at issue. (Civ. Nos. 16-1037, Docket No. 30 at pp.
4-6; 16-1095, Docket No. 41 at pp. 5-6.)

   Plaintiffs present several considerations in support of their
allegation that defendant Acosta "is empowered to implement the
Executive Orders." (Civ. No. 16-1037, Docket No. 35 at pp. 11-14.)
First, plaintiffs note that OE-2015-049 is addressed to "all heads
of government agencies" including defendant Acosta as the head of
the GDB, a government entity. See Civ. Nos. 16-1037, Docket No. 35
at p. 11; 16-1095, Docket No. 46 at p. 11; see also Civ. No. 16-
1095, Docket No. 31-2 at p. 5.   Second, plaintiffs note that
Circular Letter 1300-15-16 addressed to "Directors of the
Dependencies and Public Corporations with funds under the custody
of the Treasury Department" includes Acosta as president of the
GDB.  See Civ. Nos. 16-1037, Docket No. 35 at p. 12; 16-1095,
Docket No. 46 at p. 12; see also Civ. No. 16-1095, Docket No. 31-3
at p. 7.

   Plaintiffs next assert that the GDB, and thus its president,
Acosta, has already acted to implement the executive orders.
Plaintiffs assert that by its position as the fiscal agent,
financial advisor, and financial reporting agency to the
Commonwealth government, the GDB must be involved in the

implementation of the executive orders.  (Civ. Nos. 16-1037, Docket
No. 35 at p. 13; 16-1095, Docket No. 46 at pp. 12-13.)  Plaintiff
also points to the fact that GDB letterhead was used for the PRHTA
event notice that announced that the Secretary of Treasury, in
accordance with OE-2015-046, had begun to "claw back" pledged
funds.  (Civ. Nos. 16-1037, Docket No. 35 at p. 14; 16-1095, Docket
No. 46 at p. 13.)  Plaintiffs conclude that this must be an
indication of the GDB's involvement in that act which implemented
OE-2015-046.  (Civ. Nos. 16-1037, Docket No. 35 at p. 14; 16-1095,
Docket No. 46 at p. 13.)

      Because the GDB has a prominent and extensive role in
Commonwealth fiscal activities, because the GDB was addressed or
participated in documents regarding the payment priority scheme and
"clawing back" of funds, and because defendant Acosta was likely
involved in these actions as GDB's president, the Court finds that
plaintiff has sufficiently pled plausible claims against defendant
Acosta as GDB president based on her power to implement the
executive orders.  While plaintiffs' asserted facts are sufficient
to surpass the plausibility threshold, the Court also considers
that defendant Acosta's internal agency documents are likely within
defendant's control and thus, difficult for plaintiffs to obtain
without the assistance of formal discovery.  See Garcia-Catalan,
734 F.3d at 104 (affording latitude to plaintiff's in pleading
their claims when defendant government agency controlled relevant

Civil No. 16-1037 and Civil No. 16-1095 (FAB)                    27

documents.)   The Court finds that the facts in the complaints
regarding defendant Acosta's involvement in enacting the laws rise
above the level of plausibility required by Twombly.   Accordingly,
defendant Acosta's motions to dismiss for failure to state a claim
pursuant to Rule 12(b)(6), (Civ. Nos. 16-1037, Docket No. 30; 16-
1095, Docket No. 41), are **DENIED.**

### CONCLUSION

For the reasons discussed above, the Court **DENIES** defendants'
motion to dismiss, (Civ. No. 16-1037, Docket No. 25), **DENIES IN
PART** and **GRANTS IN PART** defendants' motions to dismiss, (Civ.
No. 16-1095, Docket No. 37) and **DENIES** defendant Acosta's motions
to dismiss, (Civ. Nos. 16-1037, Docket No. 30; 16-1095, Docket
No. 41.)  Plaintiffs' Equal Protection, Due Process, Contracts, and
Takings Clause claims remain.  (Civ. Nos. 16-1037, Docket No. 1 at
pp. 32-35; 16-1095, Docket No. 1 at pp. 48-51.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 4, 2016.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE